IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Everette Nathaniel Quiller, )
    Petitioner, )
     )
v. ) 1:12cv426 (LO/JFA)
     )
Warden Wilson, )
    Respondent. )

## MEMORANDUM OPINION

Everette Nathaniel Quiller, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons ("BOP") unlawfully forced him to sign a contract obligating him to make payments towards an assessment and criminal fine. On June 25, 2012, respondent filed a motion for summary judgment with a supporting memorandum of law and exhibits. Respondent provided petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and petitioner filed a response opposing the motion for summary on July 6, 2012. Respondent submitted a reply memorandum with additional exhibits on July 12, to which petitioner replied on July 19. Accordingly, the matter is now ripe for disposition. For the reasons that follow, respondent's Motion for Summary Judgment will be granted.

### I. Background

The following material facts are uncontroverted. In 1999, Quiller was sentenced to serve twenty-five (25) years incarceration followed by three (3) years supervised release for his

conviction of using and carrying a firearm during a drug trafficking crime. He was also ordered to pay a $200 assessment fee in full immediately, and to pay a criminal fine of $11,650.00. United States v. Quiller, Case No. 5:98CR00037-018 (E.D.N.C. July 12, 1999); Resp. Ex. A. On July 24, 2000, the district court reduced the incarcerative portion of Quiller's sentence to 225 months, and left all other terms of the original judgment and commitment order intact. Resp. Ex. B.

While Quiller was confined at FCI Estill, in South Carolina, he enrolled in the Inmate Financial Responsibility Program ("IFRP") and began to make payments toward satisfaction of his court-imposed obligations. Resp. Ex. C - D. However, on May 7, 2004, Quiller filed a Request for Administrative Remedy, stating that he was "not satisfied" with the IFRP contract that he was "forced to sign under threat" of losing his prison job. Resp. Ex. F. He protested that he was told he would be placed in "refused" status even though he was "willing to pay half of [his] UNICOR pay each month [but] that is not enough for these people." He concluded that he did not believe that his situation was "fair" based on his understanding of the law, and he requested to be removed from IFRP refusal status and allowed to pay $25 or $50 per quarter toward his restitution balance, because he could not afford the $100 he had been ordered to pay. Id. Quiller unsuccessfully pursued his administrative remedies as to his claim, until ultimately relief was denied by the Administrator of National Inmate Appeals on the following holding:

> You contend you have no voice in the determination of the amount of the Inmate Financial Responsibility Program (IFRP) payment requested of you. You request that monies received from your family not be considered when calculating your recommended payment amount.
>
> Our review of this matter reveals that both the Warden and the

> Regional Director have adequately addressed your concerns. Program Statement 5280.07, Financial Responsibility Program, Inmate (IFRP), establishes the procedure by which an inmate may make effort [sic] toward meeting their legitimate financial obligations. Payment amounts are based on a formula contained within this Program Statement which considers all monies received. The courts have upheld the authority of the Bureau of Prisons to collect court-ordered financial obligations through the IFRP and have consistently found that the IFRP procedures are lawful and Constitutional.
>
> Your sentencing judge imposed a $200.00 assessment and a fine in the amount of $11,650.00. It is appropriate, therefore, for you to participate in the IFRP. The payment amount your are requested to make is consistent with policy. Inmate participation in the IFRP is completely voluntary, but failure to make satisfactory progress toward meeting financial obligations may result in the limitation of certain privileges reflective of a demonstration of poor responsibility.

Resp. Ex. F, Admin. Rem. No. 333133-A1, Sept. 10, 2004.

Petitioner then turned to the federal forum and filed a petition for relief pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina, alleging that he was "being force [sic] to pay fine from money that someone may or may not send [him]," so that "when no one sends [him] any money, [he] was being punished. ..." Resp. Ex. E at 1. On October 29, 2004, Magistrate Judge Joseph R. McCrorey issued a Report and Recommendation that Quiller's petition failed to state a claim and should be summarily dismissed. Resp. Ex. G. By Order entered January 6, 2005, United States District Judge G. Ross Anderson, Jr. adopted the Report and Recommendation in its entirety. Quiller v. Chavis, Case No. 3:04-22735-13BC (D.S.C. Jan. 6, 2005); Resp. Ex. H.

On February 2, 2011, Quiller was transferred to FCI Edgefield, also in South Carolina. While there, he initiated the grievance process, reiterating the same challenge he made to the IFRP while he was confined at FCI Estill that the BOP was "extorting" him by forcing him to

make payments on his fine pursuant to the IFRP, increasing his payments, and placing him on "refuse" status for his noncompliance. As before, the claim was found to be without merit at each level of the grievance process. Dkt. 1, Ex. 2. At the final appeal level to the BOP's Central Office, the Administrator of National Inmate Appeals responded to Quiller's claim as follows:

> This is in response to your Central Office Administrative Remedy in which you contend staff is trying to force your family to make payments for you per the Inmate Financial Responsibility Program (FRP).
>
> Our review of this matter found the Bureau of Prisons implemented the FRP to provide inmates an opportunity to set up a plan to help them meet their court-ordered financial obligations. This plan was designed with the intent to help inmates demonstrate responsible behavior and is set forth in Program Statement 5380.08 ... This program was developed in response to laws which require all law enforcement agencies to make a diligent effort to collect court ordered financial obligations. Further, an inmate's refusal in the IFRP will be considered in his security / custody classification, eligibility in community activities, housing assignments, pay grade and work assignments. An inmate does not have a liberty interest in any of these areas for these areas involve privileges.
>
> This issue, however, has been resolved for you have participated in the FRP since October 27, 2011. The above is provided for your information.

Dkt. 1, Ex.2

As of December 13, 2011, Quiller had paid the $ 200.00 assessment fee and had an outstanding balance of $ 9,657.11 on the criminal fine imposed by the North Carolina trial court. Resp. Ex. D. On February 8, 2012, he was transferred to FCI Petersburg. Resp. Ex. J. Without participating in the grievance process at that institution, he filed the instant § 2241 application on April 18, 2012, again reiterating the same challenge to the IFRP he has made twice before, and arguing that the BOP is extorting him by forcing him to make payments toward his court-ordered

4

fine when he has no job or funds. Petitioner admits that "[t]his is the same problem that came up at the other prison ... F.C.I. Edgefield," that resulted in him "filing a complaint." Dkt. 1 at 3.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp.,

5

759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Respondent is plainly entitled to the summary judgment he seeks, because Quiller's petition is successive.[1] Title 28 U.S.C. § 2244(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides as follows:

> No circuit or district court shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

It has become well established that § 2244(a), as amended by the AEDPA, bars second or successive § 2241 applications that seek to relitigate issues that were adjudicated in a prior § 2241 proceeding. The Second, Third, Seventh and Ninth Circuits have held or noted in published opinions that § 2244(a) bars successive petitions under § 2241 directed to the same issue. Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997) (applying § 2244(a) to dismiss a second or successive § 2241 petition seeking to re-litigate a federal prisoner's claim which had been asserted and denied in a prior § 2241 petition); see Simon v. United States, 359 F.3d 139, 143 n.7 (2d Cir. 2004) (discussing Chambers); Queen v. Miner, 530 F.3d 253, 255 (3d Cir. 2008) (noting that § 2244(a) does not reference § 2254 and thus by its terms applies to any

---

[1]Respondent's suggestion that the petition should be dismissed as unexhausted is pointless. Such a dismissal would be without prejudice, and since the instant petition is successive, any petition filed after exhaustion of the claims would be successive as well.

habeas corpus application filed a person in custody pursuant to judgment of a United States court); Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998) (noting that § 2244(a) bars successive petitions under § 2241 "directed to the same issue concerning execution of a sentence."); Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 2000). The Tenth Circuit has concurred in unpublished opinions. Jackson v. Morris, 8 Fed.App'x 890 (10th Cir. 2001) (unpublished); Gibson v. Knowles, 166 F.3d 1220 (10th Cir. 1999) (table).

Similarly, prior to the enactment of the AEDPA, several circuit courts held that where a petitioner filed a previous § 2241 petition which was dismissed on the merits, § 2244(a) barred a second § 2241 habeas petition. See George v. Perrill, 62 F.3d 333, 334-35 (10th Cir. 1995); Glumb v. Honstead, 891 F.2d 872, 873 (11th Cir. 1990); Poyner v. United States Parole Comm'n, 878 F.2d 275, 277 (9th Cir. 1989); Sacco v. United States Parole Comm'n, 639 F.2d 441, 442-43 (8th Cir. 1981). The AEDPA amendments do not alter the reasoning of these circuits in applying § 2244(a) to bar a successive § 2241 petition.

Jurists in the Eastern District of Virginia have weighed in on this question as well. In Zakiya v. Reno, 52 F.Supp.2d 629, 632-634 & n.8 (E.D.Va. 1999), Judge Brinkema held that § 2244, as amended by the AEDPA, did not bar petitioner's successive § 2241 petition raising claims that had not been addressed on the merits in petitioner's previous habeas petitions.[2] Distinguishing Zakiya, Judge Friedman held in Flemming v. Brooks, No. 2:01cv582, 2002 WL 3248847, at * 5 (E.D.Va. June 21, 2002) (adopting the report and recommendation of the magistrate) that § 2244(a) did bar a petitioner's § 2241 successive petition alleging the same

---

[2] The Court, however, made no distinction between § 2244(a) and § 2244(b), which refers specifically to second or successive claims brought pursuant to § 2254.

grounds as were denied on the merits by the United States District Court for the Northern District of West Virginia and the United States Court of Appeals for the Fourth Circuit. In Singletary v. Dewalt, No. 2:04cv623, 2005 WL 1162940, at * 4 (E.D.Va. Apr. 5, 2005) (unpublished), Judge Miller made a nearly identical report and recommendation with respect to a successive § 2241 petition alleging the same grounds as were denied on the merits by the United States District Court for the District of Columbia.[3] In Gates v. Stansberry, No. 1:07cv 1212, 2008 WL 2165998 (E.D. Va. May 23, 2008) (unpublished), aff'd, 298 Fed. App'x 249, 2008 WL 4726256 (4th Cir. Oct. 29. 2008) (unpublished), this Court applied § 2244(a) to dismiss as successive a § 2241 challenge to a revocation of parole. Although the Fourth Circuit has yet to address this issue, it has upheld a district court's order dismissing a § 2241 habeas petition as "an unauthorized second or successive motion" under § 2244(a) in at least two unpublished opinions. Trader v. United States, 191 F.3d 448 (4th Cir. 1999) (table); Gates, 298 Fed. App'x at 249.

The filing of a second or successive habeas application that seeks to raise a claim that was or could have been litigated in an earlier proceeding is also precluded by the common law. In McCleskey v. Zant, 499 U.S. 467 (1991), the Supreme Court explained that by prohibiting prisoners from filing multiple petitions for relief from the same judgment, the "abuse of the writ" doctrine serves the important ends of finality, resource efficiency, certainty, and stability. Id. at 491-96. The Court outlined the contours of the doctrine in detail, as follow:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear

---

[3] The district judge adopted Judge Miller's Report and Recommendation. Singletary v. Dewalt, No. 2:04cv623, docket entry No. 9.

> for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes the petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

Id. at 494-95.

Subsequently, in Zayas v. Immigration & Naturalization Service, 311 F.3d 247, 256-57 (3d Cir. 2002), the Third Circuit considered whether the enactment of the AEDPA five years after the Supreme Court decided McCleskey precluded application of the "abuse of the writ" doctrine to second or successive § 2241 applications, and concluded that it did not, because the "AEDPA dealt with habeas petitions under § 2254 and § 2255 by building on McCleskey rather than supplanting it." Id. at 257; accord, Queen, 530 F.3d at 255. Since Zayas, the Fourth Circuit has affirmed by unpublished opinion numerous decisions by district courts where a second or successive § 2241 petition was dismissed as an abuse of the writ. See, e.g., Griffin v. U. S. Parole Commission, No. 3:02cv936, 2003 WL 23961849 (E.D. Va. Nov. 19, 2003), aff'd, 94 Fed. App'x 993, 2004 WL 859402 (4th Cir. 2004) (unpublished); see also, Jackson v. Snyder, No. 5:05-HC-811-H, 2007 WL 4124348 (E.D.N.C. Sept. 5, 2007), aff'd, 239 Fed. App'x 779, 790 n., 2007 WL 2555340 (4th Cir. 2007) (unpublished); Williams v. Wendt, No. 1:04cv136, 2006 WL 1004806 (N.D.W.Va. Apr. 7, 2006) (unpublished); Staino v. U. S. Parole Commission, No. 5:04-HC-962-FL, 2005 WL 5726582 at *3 (E.D.N.C. Nov. 23, 2005) (unpublished). In his replies to respondent's Motion for Summary Judgment, petitioner makes no attempt to demonstrate cause

and prejudice for his abuse of the writ. Accordingly, this petition is subject to dismissal pursuant to § 2244(a) and as an abuse of the writ. That being so, the Court will refrain from adjudicating respondent's alternate argument that the claim expressed lacks substantive merit, since to do so in the Court's view would abrogate the important policies those doctrines are designed to serve. McCleskey, 499 U.S. at 491-96.

## IV. Conclusion

For the foregoing reasons, respondent's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this 21st day of December 2012.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

10